DETERMINED IN THE

# FOURTH DEPARTMENT

AT

## GENERAL TERM,

### November, 1888.

---

MANFRED M. TUCKER, Respondent, *v.* THE MUTUAL
BENEFIT LIFE COMPANY OF HARTFORD, CONN.,
Appellant.

*Policy insuring. against death resulting from external, violent and accidental means —
drowning, occasioned by the capsizing of a boat by a heavy sea, is violent and acci-
dental — an insured aiding to rescue a crew from peril does not expose himself to
unnecessary danger — a son may insure his life for the benefit of his father.*

Upon the trial of an action, brought upon a policy of insurance issued by the defend-
ant to F. E. Tucker, whereby it promised to pay to the plaintiff, his father, $1,500
within ninety days after satisfactory proofs that the son had sustained "bodily
injuries through external, violent and accidental means," within the meaning of
the contract, and that such injuries alone had occasioned his death, it appeared
that the son, who was a farmer living on the shore of Lake Ontario, was insured
as a farmer; that, on November 28, 1886, a schooner had been driven aground
about 100 rods from the shore by a storm and exhibited a flag of distress, and
that the insured, who lived in the neighborhood, went, with his neighbors, in the
first boat to the rescue of the crew, and remained with the captain of the schooner
until the entire crew had left, and then left with him in a boat which was capsized
by a heavy sea and the insured was drowned    On November thirtieth the body
was found on the shore, near the wreck, with a bruise across the left temple
about an inch and a half long and a quarter of an inch wide.    Whether he was
injured by coming in contact with the boat, or by some person or thing thrown
from it when it capsized, did not appear, except as it might be inferred from
the mark.

*Held,* that, assuming that death was caused solely by drowning, it was "through external, violent and accidental means."

*Trew* v. *Railway Passengers' Assurance Company* (6 H. & N., 845) followed.

That, as the evidence showed that the waves were seven or eight or more feet high, and that the boat was overturned by them, the means were violent and the death was accidental.

The policy provided that its benefits should not extend "to death * * * happening directly or indirectly in consequence of , * * * *any voluntary exposure to any unnecessary danger in,* or in consequence of, the member being, or having been, under the influence of intoxicating drink; * * * or while employed in mining, blasting or *wrecking,* * * * except when such occupation is stated in the application and permitted.".

*Held,* that the assured, by voluntarily going to the rescue of the crew, did not expose himself to unnecessary danger; that it was his duty to aid in rescuing the crew from the peril in which they were, and there was no evidence that in doing so he exposed himself to unnecessary danger.

That the insured was not "employed in * * * *wrecking*" within the meaning of the provisions of the policy.

That the insurance effected by the son on his own life for the benefit of his father was valid.

*Olmsted* v. *Keyes* (85 N. Y., 593) followed.

APPEAL from a judgment entered in the clerk's office of Jefferson county, on April 21, 1888, on a verdict in favor of the plaintiff for $1,770.77, and from an order denying a motion for a new trial.

*D. E. Ainsworth,* for the respondent.

*John Lansing,* for the appellant.

FOLLETT, J.:

Appeal from a judgment entered on a verdict directed at the Jefferson Circuit, and heard on a case which contains all of the evidence.

The defendant issued to Fred. E. Tucker a certificate, or policy, whereby it promised to pay to his father, the plaintiff, "within ninety days after satisfactory proofs that the member (Fred. E. Tucker), during the continuance of this contract, shall have sustained bodily injuries through external, violent and accidental means, within the intent and meaning of this contract and the conditions hereunto annexed, and that such injuries alone shall have occasioned death within ninety days from the happening thereof." Among the conditions thereunto annexed were the following:

"5. PROHIBITIONS. — The benefits under this certificate shall not extend to any case in which there shall be no external or visible sign of bodily injury, nor to death  *  *  *  happening directly or indirectly in consequence of  *  *  *  any voluntary exposure to any unnecessary danger in or in consequence of the member being or having been under the influence of intoxicating drinks,  *  *  * or while employed in mining, blasting or wrecking,  *  *  *  except when such occupation is stated in the application and permitted."

"7. LOSSES AND ADJUSTMENT OF SAME — a. The member shall use all due diligence for personal safety and protection."

Fred. E. Tucker was a farmer, living on the shore of Lake Ontario, and was insured as a farmer.  November 28, 1886, a schooner was driven aground, about 100 rods from the shore, by a storm.  A flag of distress was exhibited, and the insured, who lived near, went, with his neighbors, to the rescue of the crew, consisting of eight men and one woman.  The insured was in the first boat that reached the disabled schooner, and in the last boat that left it.  He remained with the captain until the entire crew had been saved, and left with him.  On their way the boat was capsized by the heavy sea and the insured drowned.  November thirtieth the body was found on the shore, near the wreck; "there was a bruise across the left temple, about an inch and a half long and, perhaps, a quarter of an inch wide;  *  *  *  the scar was across the temple, over the left eye; it might have been made by striking a stone on shore when the body came ashore; I have no idea what made it, from my own knowledge."  After the boat was capsized, the insured came to the surface and was helped on to the boat, which was bottom side up and rolling in the sea.  He was unable to speak, and was held on to the boat by the captain and one Holbrook until he was apparently dead, and was then washed away.  Whether he was injured by coming in contact with the boat, or by some person or thing thrown from it when it capsized, does not appear, unless it may be inferred from the mark found upon his head, which, so far as the evidence shows, might have been caused after death.  These facts are undisputed.  The defendant resists the payment of the policy upon the grounds:  (1.) That it was not shown that death was caused through external, violent and accidental means, within the intent and meaning of the contract.  (2.) That the assured, by voluntarily going to

the rescue of the crew, exposed himself to unnecessary danger, and did not use all due diligence for personal safety and protection. (3.) That the assured was drowned while engaged in wrecking; and (4.) That the father had no insurable interest in the life of his son.

At the close of the evidence the defendant moved for a nonsuit, which was refused; then moved that a verdict be directed in its favor, which was refused, and thereupon the court directed a verdict in favor of the plaintiff. The defendant excepted to each of these rulings, which are the only exceptions contained in the record. Assuming that death was caused solely by drowning, it was " through external, violent and accidental means." Means is that which produces a result, and, in the sense used in the contract, is synonymous with cause. The means or cause, the water, was external, though it took effect internally, as do all external causes or means of death. In *Trew* v. *Railway Passengers' Assurance Company* (6 H. & N., 839, 845), a case of drowning, Chief Justice COCKBURN, speaking for a unanimous court, said: " If they (jurors) are of opinion that he died from the action of the water causing asphyxia, that is a death from external violence within the meaning of this policy, whether he swam to a distance and had not strength enough to regain the shore, or on going into the water got ont of his depth." (See, also, *Winspear* v. *Accident Ins. Co.*, 42 Law Times [N. S.], 900; 22 Alb. Law Journal, 223; affirmed, 6 Q. B. Div., 42; *Reynolds* v. *Accidental Ins. Co.*, 22 Law Times, 820; 18 Weekly Rep., 1141; *Lawrence* v. *Accident Ins. Co.*, 7 Q. B. Div., 216; *Bacon* v *U. S. Mutual Accident Ass'n.*, 44 Hun, 599; *Paul* v. *Travelers' Ins. Co.*, 45 id., 313.) The evidence is that the waves were seven or eight or more feet high, and that the boat was overturned by them. The means were violent. (See cases above cited.) The death was accidental.

The second defense is untenable. It was the duty of the insured to aid in rescuing the crew from the peril in which they were, and there is no evidence that in doing so he exposed himself to unnecessary danger; besides, the exposure was not in consequence of the insured being under the influence of intoxicating drinks. The insured was not employed in * * * wrecking," within the meaning of the parties to the contract, which reads: " While

employed in * * * wrecking * * * except when such occupation is stated in the application and permitted." The insured stated in the application that he was, by occupation, a farmer, and he was insured as such. He was a farmer, and not, by occupation, a wrecker. As well might a farmer who should be smothered in attempting to rescue his neighbors from their burning dwelling be called a firemen as this man a wrecker.

"It is well settled that a man has an insurable interest in his own life and in that of his wife and children, a woman in the life of her husband and the creditor in the life of his debtor." (*Connecticut Mutual Life Ins. Co.* v. *Schaefer*, 94 U. S. 457, 460; *Warnock* v. *Davis*, 104 id., 779.) But this insurance was not effected by the father on the life of the son, but by the son on his own life, for the benefit of his father, and is valid, and within *Olmsted* v. *Keyes* (85 N. Y., 593), in which case Judge EARL, in speaking for the court, said: "It is abundantly settled in this State, that one who takes an insurance upon his own life may make the policy payable to any person whom he may *name in the policy*, and that such person need have no interest in the life insured."

The judgment is affirmed with costs

HARDIN, P. J., and MARTIN, J., concurred.

Judgment affirmed, with costs.