### WILLIAMS *v.* UNITED STATES MUT. ACC. ASS'N.

(*Supreme Court, General Term, Third Department.* May 21, 1891.)

1. ACCIDENT INSURANCE—VOLUNTARY INJURIES.

In an action on an accident insurance policy, it appeared that, after the insured had crossed a railroad track at a street crossing, he met two men going towards the track, and warned them to look out for an engine which was then approaching. One of the men said, "I am not afraid; my life is insured;" and both of them then crossed the track, and passed on, deceased going in the opposite direction. The engineer of the approaching train, which was running about 4 miles an hour, testified that, when the engine was about 25 feet from the crossing, he saw the insured go on the track, and that he (insured) could have crossed if he had continued to walk. When the engineer next saw the insured he was squatting on the track, in which position he was struck and killed. There was evidence that, at the time of the accident, the insured was financially embarrassed. There was also evidence that he was of good habits, mentally sound, and was negotiating for employment at a good salary. *Held,* that whether the death of the insured resulted from "voluntary exposure to unnecessary danger," or was suicide, within the clause of the policy precluding a recovery in such cases, was properly submitted to the jury; and a verdict for plaintiff would not be disturbed on appeal. LEARNED, P. J., dissenting.

2. SAME—EXPOSURE TO UNNECESSARY DANGER.

Injuries received while attempting to rescue persons from supposed danger are not within the exception of an accident policy that the insurance "shall not extend or cover voluntary exposure to unnecessary danger." Following *Tucker* v. *Insurance Co.,* 4 N. Y. Supp. 505.

Appeal from circuit court, Saratoga county.

Action by Frances E. Williams against the United States Mutual Accident Association on an accident insurance policy issued by the appellant to Alonzo C. Williams, payable in case of loss to his wife, who brings this action. The policy insured, subject to the conditions contained in it, against personal bodily injury, during the continuance of membership, through external violence and accidental means, designating the sums allowed for certain specified injuries, and providing that, "if death shall result from such injuries alone, and within ninety days, the association will pay $5,000 to Frances E. Williams, his [insured's] wife, or to the survivor of them, or, in event of

her prior death, according to the by-laws." The policy also provided, among other exceptions, that "the insurance, under this certificate, shall not extend to or cover * * * suicide, felonious or otherwise, sane or insane, sunstroke, or freezing, riding, driving races, voluntary exposure to unnecessary danger; nor extend to or cover intentional injuries inflicted by the insured, or any other person, or where the accident, injury, or death happens while the insured is under the influence of intoxicating drinks or narcotics, or in consequence thereof, or while or in consequence of violating the law of any company or corporation, or while employed in mining, blasting, or wrecking, or in the manufacture, transportation, or use of gunpowder, or any other explosive compound, (unless insured to cover such occupation,) standing or riding upon the platforms of any conveyance, using steam or electricity as a motive power, or entering or attempting to leave such conveyance while the same is in motion, or walking on the road-bed or bridge of any railroad, are hazards not contemplated or covered by this insurance." The answer set up that the injury complained of occurred in consequence of acts of the insured within some of the above exceptions.

The evidence shows that, between 6 and 7 o'clock in the evening of the 22d of November, 1890, the insured was struck by a locomotive engine on the Adirondack Railroad, at the crossing on Church street, in the village of Saratoga Springs, and injured to such an extent that he died from the injury in a few hours. The railroad track crosses on Church street, on grade, at the point where the injury occurred; and immediately before the injury the insured crossed the railroad track, going in an easterly direction, and, about 100 feet from the railroad on the east side, met two men, who were going in the direction of the railroad track, and in a conversation with them said: "Boys, look out for the engine; may be he will catch you;" to which one of the persons addressed replied, "I am not afraid, my life is insured." A train of cars was then slowly approaching from the south. Deceased started east, and the persons whom he met proceeded west across the track. The engineer running the train testified, in substance, that "as his north-bound train approached Church street, at a rate of speed of about four miles per hour, and when about twenty-five feet from the crossing, the deceased started, and went on the track, and, if he had kept on walking, he would in all probability have gone across; but the next I saw of him he was squatted down like that, [showing, witness kneeling;] and as quick as I saw him I got off my seat and reversed the engine." The witness describes the manner in which deceased was struck. At the time, the track and street were lighted up from the locomotive head-light and the electric light at the crossing. The evidence also discloses that the deceased was on the day of the injury in good health, was of reliable and temperate habits, industrious, honorable, and of no evil associations; that there was never insanity or want of entire mental soundness in him or his family, and that he was a life-long member of the Methodist church; that on the day of his death he was negotiating a contract for an agency of himself and wife for one year, at a salary, respectively, of $50 a month and expenses. There was some evidence offered by the defendant that at the time of the injury the deceased was under financial embarrassment. The jury rendered a verdict for the plaintiff for $5,190, and from a judgment entered thereon, and from an order denying a motion for a new trial, made on the minutes of the judge, defendant appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Winsor B. French,* for appellant.    *Edgar T. Brackett,* for respondent.

MAYHAM, J. It is insisted by the learned counsel for the appellant that there is no evidence in the case that the insured came to his death by accidental means, within the intent and meaning of the policy; but that the uncontroverted proof is that the injury from which he died was occasioned by

his own voluntary act, and that his death was suicidal. If, from the evidence, this contention can be maintained, then it was wrong for the learned trial judge to submit the case to the jury, and his refusal to nonsuit was error, for which the judgment should be reversed. But if, on the contrary, the evidence is open to two constructions, either of which might fairly be found from the evidence, then it becomes a question of fact for the determination of the jury. That the death was caused by personal bodily injury, effected during the continuance of membership, through external, violent means, is not questioned. Was it accidental? This question was either for the court or for the jury to answer. "Accidental" is that which happens without design or expectation.. As applied to an insurance policy, it has been defined by the court of appeals as follows: "An 'accident' is the happening of an event without the design and aid of the person, and which is unforeseen." *Paul* v. *Insurance Co.*, 112 N. Y. 478, 20 N. E. Rep. 347. This definition excludes the idea of design, and makes the event wholly involuntary. The opposite to "accident" would therefore be "design," "volition," "intent." If the insured turned back after crossing the railroad track, and stood on the track, with the intent and purpose of being hit by the locomotive, then the collision was not an accident, but the result of design; and, as such collision would naturally and almost necessarily produce death, the insured would in law be presumed to intend the consequence of his own voluntary and intentional act. But if, on the other hand, the insured turned back on the public street, recrossing the railroad track, and going to some point beyond, and while attempting to cross unintentionally stumbled, slipped, or from any other cause fell, and was overtaken and hit by the engine, then the injury was the result of accident, and provided for in the policy. It therefore becomes a question of intent, and the intent with which the insured went upon the track where he received the injury is an inference to be drawn from the circumstances, and was therefore a proper subject for the determination of the jury. *Stimson* v. *Wrigley*, 86 N. Y. 337. If this death had happened by the intentional taking of a fatal dose of poison by the insured, or by his intentional suspension of his body by a rope about his neck, the act would have so unmistakably indicated the intent of the deceased as to have presented only of question of law for the trial court. But the passing by the insured across a railroad track upon a public and much-traveled street in a village was an usual and ordinary act, followed by an unusual result. This is within the definition of an "accident,"—"an unusual and unexpected result, attending the performance of a usual and necessary act." 8 Alb. Law J. p. 85.

But it is urged by the learned counsel for the appellant that it was shown that the insured was, at the time of the injury, under mental depression from overwhelming financial embarrassment. On the other hand, it is shown that he had just completed, or was in negotiation for, an advantageous business engagement. These considerations were urged to the jury on either side to establish the theories of the respective parties, and were proper subjects for their consideration, as bearing upon the question of the probability of accident or suicide, and furnish evidence of the fact that the question of accident and intent were in dispute on the trial. In *Goldschmidt* v. *Insurance Co.*, 12 N. Y. Supp. 866, the deceased was found dead in bed, and there was proof of odor of hydrocenic acid, and some appearance of poison in the stomach of the deceased at the autopsy. Held, that the question of suicide should have been submitted to the jury. We think the question in this case was properly submitted to the jury. The conduct of the insured was capable of the construction given it by the jury, and, while they might have found for the defendant upon this issue, yet, having found for the plaintiff upon a question which was properly submitted to them, and upon evidence sufficient to sustain their verdict, the judge was right in refusing to set it aside. But

it is urged by the learned counsel for the appellant that the injury to the in- sured was occasioned "by his own act, or by voluntary exposure to unneces- sary danger or intentional injuries inflicted by himself upon himself; and that, the injury, therefore, came within the exceptions in the policy. As we have seen, the evidence shows that the deceased attempted to cross the railroad track in front of the approaching engine, and was hit by it; but it also shows that he had time to have passed in safety. Why he did not, as we have seen, was for the jury to determine. As he had time to pass, the jury might find that his attempt to do so was not a voluntary exposure to danger, or an in- tentional injury to himself. As was said by MARTIN, J., in *Peck* v. *Associa- tion*, 5 N. Y. Supp. 215: "It was not to be presumed that his injury was self-inflicted."

From the evidence, the jury may have adopted the theory urged by the learned counsel for the respondent, that the insured was, at the time of the injury, humanely directing his efforts to rescue from supposed danger the persons whom he had just met, and cautioned against the danger of the ap- proaching train. If that were so, it would not be exposing himself to unnec- essary danger, within the case of *Tucker* v. *Insurance Co.*, 4 N. Y. Supp. 505, 121 N. Y. 718, 24 N. E. Rep. 1102. We think this was also a question of fact for the jury.

The appellant insists that the trial court erred in his charge, and his re- fusal to charge, and that the judgment should, for that reason, be reversed. We have carefully read the charge of the learned judge, and find no error or misdirection in the main charge, and no exception to the same for which the judgment should be interfered with. Some exceptions were taken to the charge, and refusals to charge, as requested. But we think that no error was committed by the judge in charging, or refusing to charge, as requested. On the whole, we think the judgment should be affirmed. Judgment af- firmed, with costs.

LANDON, J., (*concurring*.) I doubt as to this verdict. But it was reached as the sequence of methods which the law prescribes. If a new trial was granted, I suppose the only way in which a different verdict could be obtained would be for the court to encroach upon the functions of the jury. I cannot advise such a method, and therefore concur.

LEARNED, P. J., (*dissenting*.) The railroad running about north and south crosses Church street on grade. There is an electric light at the crossing. The railroad train was moving northward about four miles per hour. De- ceased was on Church street, west of the track. He crossed over, and about 100 feet east of the track met two men going westward, to whom he said: "Look out, boys; the engine will catch you." They continued to walk west- ward, and he went eastward. But he must soon have turned, and walked westward, towards the crossing; for half way between the corner of the fence and the tracks he was seen. There he stopped, looking in the direction of the approaching engine. The bell was ringing and whistle was blown. When the train was about 20 feet from the crossing, he started, and walked westward upon the track. As he got between the rails, he sank down in a stooping position or squatted. In that position he was struck by the en- gine, and he died as the result. On these undisputed facts I cannot think that this verdict should stand, when the certificate of insurance excepts sui- cide and voluntary exposure to unnecessary danger. There is no evidence that the two men, who had crossed the track and were some 30 feet west of it, had any intention of coming back, or that there was any necessity for the deceased to go on the track for their protection; and nothing is shown to ex- cuse the deceased for putting himself into the place of imminent danger. If the deceased did not commit suicide, then I think he voluntarily exposed him-

-self to unnecessary danger.   There is no evidence that the sinking down or squatting down proved on the trial was not voluntary, and the going upon the track in front of the approaching train was unquestionably voluntary. Even if it were not dangerous to go on the track, it was certainly dangerous to remain there.