## THE FIDELITY AND CASUALTY COMPANY

*v.*

## HANNAH M. SITTIG.

*Opinion filed October 13, 1899.*

1. INSURANCE—*what not "voluntary exposure to unnecessary danger."* Attempting to get upon the platform or steps of a moving car of a railway train just after it has started is not, as matter of law, a "voluntary exposure to unnecessary danger," in violation of a clause in an accident insurance policy.

2. SAME—*whether attempt to board moving train was obviously danger-*
*·ous is for the jury.* It is a question of fact for the jury in an accident insurance case whether an attempt to get aboard a moving train just after it had started was obviously dangerous.

3. SAME—*necessary danger includes more than inevitable or unavoid-*
*able danger.* The necessity for incurring danger which is impliedly sanctioned in a provision of an accident insurance policy that the insurance does not cover voluntary exposure to unnecessary danger, includes not only that which is unavoidable or inevitable, but also that which men of moral responsibility would regard as of such importance in the performance of duty as to justify the incurring of danger to accomplish it.

*Fidelity and Casualty Co.* v. *Sittig,* 79 Ill. App. 245, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

JOHN A. POST, and JOHN B. BRADY, for appellant.

THORNTON & CHANCELLOR, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The Appellate Court has affirmed a judgment recovered by appellee in the superior court of Cook county, against appellant, on a policy of accident insurance.

The insured, Herman C. Sittig, was accidentally killed while attempting to board a suburban train of the Illinois Central Railroad Company. The Appellate Court,

in stating the case, said: "The evidence tends to show that he reached the neighborhood of the steps of the station platform just after the train had started; that he threw his valise on the platform of the car, seized the railing and attempted to climb on, but either lost his hold or fell after being carried some distance, or else was knocked off and killed by coming in contact with a small building used as a ticket office, which stood very near the track and distant about one hundred and forty feet from the station platform." The evidence shows that this is a fair statement of the accident.

The insured was a traveling salesman and so described in the policy, which stated that "this insurance covers injuries received in travel by regular passenger or mail trains." The policy also contained this clause: "This insurance does not cover   *   *   *   voluntary exposure to unnecessary danger;" and the contention of the appellant is that the insured met his death by exposing himself voluntarily to unnecessary danger, and that for that reason the judgment cannot be sustained. So far as the assignment of error embraces the question of fact involved in the decision of the Appellate Court, such decision is, by virtue of the statute, final, and we shall not, therefore, follow appellant's counsel in their argument upon the facts. But at the close of the evidence the defendant asked the court to instruct the jury to find a verdict for the defendant, and took an exception to the court's refusal to give the instruction, and thus the legal sufficiency of the evidence to sustain the judgment is presented to us for decision.

There was sufficient evidence to sustain the conclusion that after the insured had secured a secure footing upon the steps of the car, and was holding to the hand-rail and about to draw himself upon the platform of the car, he was struck with such force upon the side and back of his head by the ticket office building, as the train passed it, as to break his neck and knock him under the train.

He was a traveling salesman, but what was the particular emergency or necessity for his effort to board this particular train after it had started does not appear from the evidence. Nor does it appear that he knew of the ticket office building, or its close proximity to the track or to the moving cars. The trainmen testified that the train, after starting, had moved from one hundred to one hundred and twenty-five feet, and was going at a speed of from eight to ten miles an hour when the insured attempted to get aboard, but other witnesses testified to a less degree of speed. There was testimony, also, that some one called to the insured as he was about to make the attempt to board the train, not to do so, but whether or not this warning was heard by the insured does not appear. The death by accident insured against by the policy having been proved, it devolved on the defendant to prove a violation by the insured of the condition, or, rather, that by his act he brought himself within the exception in the policy, relied on to avoid payment. This exception, as applicable to this case, was, in substance, that, although accidental, death caused by voluntary exposure to unnecessary danger was not insured against. To relieve the company from liability it was necessary to establish two facts: First, that the exposure to danger was voluntary on his part; and second, that it was unnecessary.

The term "voluntary exposure" does not mean simply that the act of attempting to get aboard of the moving train was voluntary or was consciously and intentionally performed, but also that the insured was conscious of the danger to which he was then exposing himself and voluntarily assumed it, or that the danger was so apparent that a man of ordinary intelligence would, under the circumstances, necessarily have known it. One may voluntarily do an act exposing himself to great danger which danger he does not apprehend and which is not obvious. In such a case it could not be said that he vol-

181—8

untarily exposed himself to danger. If he does not know of the danger, how can it be said that he voluntarily assumes it or exposes himself to it? Mere failure to observe ordinary care would not, as in an action for negligence, defeat a recovery on the contract. This view of the law is not controverted by appellant. Indeed, the trial court, at appellant's request, instructed the jury that the words "voluntary exposure," as used in the policy, implied conscious, intentional exposure,—something which he was willing to take the risk of; that it meant a willing or willful assumption of the risk knowing the risk,—a willful, conscious assumption of the risk of danger. As before said, there was no evidence whatever that he knew of the proximity of the ticket office building, or had any reason to believe that he was exposing himself to the danger of coming in contact with any such object before he could get within the car. His experience, strength and activity may have been such, so far as the evidence shows, that there was less danger to him in mounting a car going at the speed mentioned by the witnesses than there would be to many persons in mounting a car at the moment of starting, and it would be an unreasonable rule to adopt, to hold, as a legal proposition, that a traveler who steps upon the platform or steps of a moving car of a railway train voluntarily exposes himself to unnecessary danger,—though it may be conceded he is guilty of negligence in so doing. There are, doubtless, few trainmen whose duty it is to alight at station platforms who do not board the train after it has started. In doing so it certainly could not be said, as a matter of law, that they thus incur obvious danger. At what rate of speed, then, must the train be moving before it can be said that an attempt to get aboard would be obviously dangerous? All reasonable minds would agree that it would be obviously dangerous to attempt to climb upon a passing railway train going at full speed or at a high rate of speed, and in a proper case, doubt-

less, the jury would be so instructed; but it does not follow that it would be proper to so instruct the jury in a case where the train had not, after starting, proceeded beyond a hundred or a hundred and twenty-five feet and had acquired only such speed as shown by the evidence in this case.   The question in such a case is one of fact, and not of law, and in the case at bar the question of fact has been conclusively settled against the appellant. It would be to usurp the province of the jury and of the courts below, and to do what by statute we are forbidden to do, should we reverse this judgment on this contention of appellant.

Many cases have been cited, but in most of them the provisions of the policy were different or the facts found were materially different from those in the case at bar. Thus, in *Tuttle* v. *Insurance Co.* 134 Mass. 175, in addition to a provision similar to the one here under consideration, the policy required the insured to use all due diligence for his personal safety and protection.   But we need not review the cases which were decided upon questions of fact or upon dissimilar provisions of the insurance contract.   Here we are asked to declare, as a matter of law, against the conclusive finding of facts to the contrary, that the insured voluntarily exposed himself to unnecessary danger,—this, too, notwithstanding there is no evidence, direct or circumstantial, to which we have been referred, whether such exposure was necessary or not. For one to leap into a turbulent stream, rush into a burning building, or do any other hazardous thing to save human life, would be a voluntary exposure to danger but not to unnecessary danger. So, too, many emergencies in the lives of men occur where the most urgent necessity requires their presence at some particular place at some particular time, and where to miss a train would involve serious consequences. In such a case a voluntary exposure to danger might not be unnecessary.   The presence of a physician or surgeon at some critical period in the

illness or injury of a human being might be necessary to save life, and it might be necessary for him to expose himself to danger to reach his patient or in some other respect to perform his professional duty. The necessity implied in the provision of the policy does not mean only that which is unavoidable or inevitable, but also any object or purpose which men of moral responsibility and prudence would regard as of such serious importance in the performance of duty as to demand or justify the incurring of risk of danger to accomplish it. Whether the jury, and finally the Appellate Court, decided the question of fact correctly we cannot inquire, but it is clear that the trial court did not err in refusing to give to the jury the instruction to find for the defendant.

It is also urged that the trial court erred in refusing certain other instructions, but we are of the opinion no error was committed in that regard.

The judgment must be affirmed.

*Judgment affirmed.*