DA RIN, ADMINISTRATOR, RESPONDENT, *v.* CASUALTY COM-
PANY OF AMERICA, APPELLANT.

(No. 2,820.)

(Submitted April 7, 1910.   Decided April 25, 1910.)

[108 Pac. 649.]

*Accident Insurance—Notice and Proof of Death—Evidence—
Sufficiency—Waiver—Exposure to Danger—Attempt to Save.
Life.*

Accident Insurance—Notice and Proof of Death.
  1.   While the giving of notice and the furnishing of proof of death,
  called for by the provisions of an accident insurance policy, are dis-
  tinct and separate acts, proof of death, when seasonably made, may
  also serve the purpose of notice; but a mere informal notice does not
  ordinarily supply the place of formal proof.

Same—Proof of Death—Evidence—Nature and Sufficiency.
  2.   The proof of death required to be made by the terms of a policy
  of accident insurance need not consist of formal depositions or sworn
  statements of eye-witnesses, but evidence in any form, when substan-
  tial and trustworthy enough to enable the insurer to form an intelli-
  gent estimate of his rights and liabilities under his contract, is suf-
  ficient, and it is for the court, and not for the insurer, to say whether·
  it gives substantially the information stipulated for in the policy.

Same—Notice and Proof of Death—Sufficiency—Waiver.
  3.   When notice of a casualty and proof of resulting death are incor-
  porated in the same communication to the insurer, and the proof of
  the cause of death, with the attendant facts, meets all the require-
  ments of the policy, except that the statement is not as full as it
  might be, the failure of the insurer to demand more explicit proof is
  a waiver of his right to thereafter object to its sufficiency.

Same—Attempt to Save Life—Negligence.
  4.   The law will not impute negligence to ᵖone who, in an attempt
  to save human life, is injured, unless the attempt be made under such
  circumstances as to constitute it rashness in the estimation of prudent
  persons.

Same—Attempt to Save Life—Exposure to Unnecessary Danger—Jury
  Question.
  5.   *Held,* that the question whether the death of a miner who, while
  attempting to rescue a fellow-workman who had been overcome by
  noxious gases, was himself overcome and died from the effects of
  the inhalation of such gases, resulted from an unnecessary exposure
  to danger so as to absolve the defendant company from liability under
  a provision in its contract of insurance, was one for the jury.

*Appeal from District Court, Silver Bow County; Jeremiah J.
Lynch, Judge.*

ACTION by Peter Da Rin, administrator of Joseph Battista Pinazza, against the Casualty Company of America. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

*Messrs. Kremer, Sanders & Kremer* submitted a brief in behalf of Appellant. *Mr. Louis P. Sanders* argued the cause orally.

It is a primary law of insurance that notice and proof are not the same, that they cannot be considered as a combined condition, but are separate and distinct conditions precedent to the right of recovery on a policy where they are set out as such. (2 May on Insurance, 4th ed., sec. 461; 4 Joyce on Insurance, sec. 3286; *O'Reilly* v. *Guardian M. L. Ins. Co.*, 60 N. Y. 169, 19 Am. Rep. 151; *Germania F. Ins. Co.* v. *Columbia Encaustic Tel. Co.*, 11 Ind. App. 385, 39 N. E. 304; *Insurance Co.* v. *Brimm*, 111 Ind. 281, 12 N. E. 315; *Pickel* v. *Ins. Co.*, 119 Ind. 291, 21 N. E. 898; *Cargell* v. *Millers' etc. Ins. Co.*, 33 Minn. 90, 22 N. W. 6; *German Ins. Co.* v. *Davis*, 40 Neb. 700, 59 N. W. 698; *Burlington Ins. Co.* v. *Ross*, 48 Kan. 228, 29 Pac. 469; *State Ins. Co. of Des Moines* v. *Belford*, 2 Kan. App. 280, 42 Pac. 409; *Westchester Fire Ins. Co.* v. *Coverdale*, 9 Kan. App. 651, 58 Pac. 1029; *Hosley* v. *Black*, 28 N. Y. 438; *Bogardus* v. *Insurance Co.*, 101 N. Y. 335, 4 N. E. 522; *Fox* v. *Davidson*, 36 App. Div. 159, 55 N. Y. Supp. 524; *Armstrong* v. *Insurance Co.*, 130 N. Y. 565, 29 N. E. 991; *Sullivan* v. *Insurance Co.*, 34 App. Div. 128, 54 N. Y. Supp. 629; *Weeks* v. *O'Brien*, 141 N. Y. 199, 36 N. E. 185.)

We are aware of that class of decisions in insurance cases that will be urged by the respondent in support of his contention that one notice can constitute proof, etc. These cases are easily differentiated from the case at bar and those cases heretofore cited. Respondent's cases will contain some method of waiver, either by the acts of the insurer after notice and proof have been forwarded to it, or by some act of the insurer in taking part in some autopsy or coroner's inquest, or in the

preparation of some of these proofs.  In the case at bar there were no overt acts on the part of insurer which would bring it within the terms of these decisions on waiver.  It was absolutely silent in the matter and silence is not waiver.  (Joyce on Insurance, sec. 3361; *O'Reilly* v. *Guardian Mut. Life Ins. Co.*, 60 N. Y. 169, 19 Am. Rep. 151; *Everett* v. *Niagara Ins. Co.*, 142 Pa. 322, 21 Atl. 817; *Beatty* v. *L. C. Mut. Ins. Co.*, 66 Pa. 9, 5 Am. Rep. 318; *Cornell* v. *Milwaukee Mut. F. Ins. Co.*, 18 Wis. 388; *Patrick* v. *Farmers' Ins. Co.*, 43 N. H. 621, 80 Am. Dec. 197; *Diehl* v. *Adams Co. Mut. Ins. Co.*, 58 Pa. 452, 98 Am. Dec. 302; *Armstrong* v. *Agricultural Ins. Co.*, 130 N. Y. 560, 29 N. E. 991; *Home Fire Ins. Co.* v. *Driver*, 87 Ark. 171, 112 S. W. 200.)   Where a waiver is relied upon, it must be pleaded. (May on Insurance, sec. 589; *Western Home Ins. Co.* v. *Thorp*, 48 Kan. 239, 28 Pac. 991; *Gillett* v. *Burlington Ins. Co.*, 53 Kan. 108, 36 Pac. 52; *Long Creek Bldg. Assn.* v. *State Ins. Co.*, 29 Or. 569, 46 Pac. 366; *Westchester Fire Ins. Co.* v. *Coverdale*, 9 Kan. App. 651, 58 Pac. 1029; *Deming Inv. Co.* v. *Fire Ins. Co.*, 16 Okl. 1, 83 Pac. 918, 4 L. R. A., n. s., 607; *Parsons* v. *Grand Lodge A. O. U. W. of Iowa*, 108 Iowa, 6, 78 N. W. 676.)

The rule governing a voluntary exposure to unnecessary danger is tersely expressed as follows: "If the danger is one that a reasonably prudent man ought to know, voluntary exposure thereto will come within the exception.  If, however, the danger or hazard is such as would not be visible to an ordinarily prudent person, then there is no voluntary exposure to unnecessary danger."  (1 Cyc. 261, and numerous cases cited.)   The courts in many instances except from the rule of "voluntary exposure to unnecessary danger" cases where one is injured in attempting to rescue others in supposed danger.  (1 Cyc. 261.) But where the act of the rescuer is one of wanton recklessness and disregard of danger, they hold that by so acting the rescuer voluntarily exposed himself to unnecessary danger. (5 Thompson on Negligence, 2d ed., p. 85, and cases cited; *Deloy* v. *Travelers' Ins. Co.*, 171 Pa. 1, 50 Am. St. Rep. 787, 32 Atl. 1108.)

In behalf of Respondent, there was a brief by *Mr. Jesse B. Roote,* and *Mr. James E. Murray,* and oral argument by the latter.

The respondent maintains that the report of accident is both notice and proof, combined in one paper. (*Farmers' M. F. I. Co.* v. *Moyer,* 97 Pa. 441, 448.)   The contract of insurance here may be divided into two parts—first, for accidents which result in a disability, and, second, for accidents which result in death. In this case the accident resulted in immediate death, and created a claim for a death loss.   If the accident had resulted in an injury which later, say two weeks, resulted in death, then no doubt a notice and the proofs were necessarily separate and distinct, but where accident and death are simultaneous the necessity for separate notice and proof disappears.   This is well illustrated in the case of *McFarland* v. *United States Mut. A. Assn.,* 124 Mo. 204, 27 S. W. 436.   The policy in that case is different from the policy here, but the reasoning of the court will apply at bar.   (*Parks* v. *Anchor etc. Ins. Co.,* 106 Iowa, 402, 76 N. W. 743.)

Where the contents of the proofs are not specified by the policy, all that is necessary is that the proofs reasonably inform the insurer of its liability.   (*Brown* v. *Fraternal A. Assn.,* 18 Utah, 265, 55 Pac. 63; *Van Eman* v. *Fidelity & C. Co.,* 201 Pa. 537, 51 Atl. 177; *Charter Oak etc. Co.* v. *Rodel,* 95 U. S. 232, 21 L. Ed. 433; *Phoenix Ins. Co.* v. *Rad Bila etc.,* 41 Neb. 21, 59 N. W. 752; *Parks* v. *Anchor etc. Co.,* 106 Iowa, 402, 76 N. W. 743; *Pringle* v. *Des Moines I. Co.,* 107 Iowa, 742, 77 N. W. 521; *Travelers' Ins. Co.* v. *Sheppard,* 85 Ga. 751, 12 S. E. 23; *Walsh* v. *Washington etc. Co.,* 32 N. Y. 427, 440; *Connecticut etc. Co.* v. *Akens,* 150 U. S. 467, 14 Sup. Ct. 155, 37 L. Ed. 1148.)

The insurer is not the sole judge of the sufficiency of proofs. (*Noyes* v. *Commercial etc. Assn.,* 190 Mass. 171, 76 N. E. 665; see, also, *Taylor* v. *Aetna etc. Co.,* 13 Gray, 434.)   If the insurer denies all liability on grounds other than failure of proof, failure of proof is no defense.   (*Orient Ins. Co.* v. *Clark,* 22 Ky.

Law Rep. 1066, 59 S. W. 863; *McComas* v. *Covenant etc. Co.*, 56 Mo. 573; *Tayloe* v. *Merchants' etc. Co.*, 50 U. S. 390, 13 L. Ed. 187; *Omaha etc. Co.* v. *Dierks*, 43 Neb. 569, 61 N. W. 745; *Farnum* v. *Phoenix Ins. Co.*, 83 Cal. 246, 17 Am. St. Rep. 233, 23 Pac. 869.)

The act of Pinazza in attempting to rescue his fellow-servant was a necessary act, and not voluntary exposure to unnecessary danger. (*Fidelity & Casualty Co.* v. *Sittig*, 181 Ill. 111, 54 N. E. 903, 48 L. R. A. 359; *Tucker* v. *Mutual B. L. Co.*, 50 Hun, 50, 4 N. Y. Supp. 505; *Williams* v. *United States Mut. A. Assn.*, 14 N. Y. Supp. 728; s. c., 82 Hun, 268, 31 N. Y. Supp. 343; *Matthes* v. *Imperial A. Assn.*, 110 Iowa, 222, 81 N. W. 484; *Employers' Liability etc. Co.* v. *Anderson*, 5 Kan. App. 18, 47 Pac. 331; *Travelers' Ins. Co.* v. *Clark*, 109 Ky. 350, 95 Am. St. Rep. 374, 59 S. W. 7; *Smith* v. *Aetna etc. Co.*, 115 Iowa, 217, 91 Am. St. Rep. 153, 88 N. W. 368, 56 L. R. A. 98.)   The words "voluntary exposure to unnecessary danger" mean an exposure willingly undertaken of a hazard which necessity does not require. (*United States Mut. A. Assn.* v. *Hubbell*, 56 Ohio St. 516, 47 N. E. 544, 40 L. R. A. 453.)

Negligence on the part of deceased is no defense. The supreme court of Wisconsin, in *Schneider* v. *Provident Life Ins. Co.*, 24 Wis. 28, 1 Am. Rep. 157, discusses at length the question of negligence of the insured barring a recovery, and to this case attention is respectfully called. (See, also, *United States Mut. A. Assn.* v. *Hubbell*, 56 Ohio St. 516, 47 N. E. 544, 40 L. R. A. 453; *Smith* v. *Aetna etc. Co.*, 115 Iowa, 217, 91 Am. St. Rep. 153, 88 N. W. 368, 56 L. R. A. 271; *Angier* v. *Western Assur Co.*, 10 S. D. 82, 66 Am. St. Rep. 685, 71 N. W. 761.) The burden of proving negligence is upon the defendant. (*Smith* v. *Aetna etc. Co.*, 115 Iowa, 217, 91 Am. St. Rep. 153, 88 N. W. 368, 56 L. R. A. 271.) Voluntary exposure to unnecessary danger is an affirmative defense, and the defendant must allege this, and prove it by a preponderance of the evidence. It must prove that there was no necessity for the action of Pinazza. (*Badenfeld* v. *Massachusetts Mut. A. Assn.*, 154

Mass. 77, 27 N. E. 769, 13 L. R. A. 263; *Jones* v. *United States Mut. A. Assn.,* 92 Iowa, 652, 61 N. W. 485; *Freeman* v. *Travelers' Ins. Co.,* 144 Mass. 572, 12 N. E. 372; *Meadows* v. *Pacific etc. Co.,* 129 Mo. 76, 50 Am. St. Rep. 427, 31 S. W. 578; *Williams* v. *United States Mut. A. A.,* 82 Hun, 268, 31 N. Y. Supp. 343; *Payne* v. *Fraternal A. A.,* 119 Iowa, 342, 93 N. W. 361.)

The record shows conclusively that Pinazza was overcome by gas and that his death was due to an accident. If Pinazza died by reason of some disease, as heart failure, and not by reason of the accident alleged, the burden is on defendant to so prove. (*Payne* v. *Fraternal A. A.,* 119 Iowa, 342, 93 N. W. 361; *Meadows* v. *Pacific etc. Co.,* 129 Mo. 76, 50 Am. St. Rep. 427, 31 S. W. 578.) The burden of proof is on defendant to show that death was due to an excepted cause. (*Anthony* v. *Mercantile M. A. A.,* 162 Mass. 354, 44 Am. St. Rep. 367, 38 N. E. 973, 26 L. R. A. 406.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by the plaintiff, as administrator of Joseph Battista Pinazza, deceased, to recover on a policy of insurance for the death of his intestate, caused by accident. On May 20, 1908, one Labek, a miner working underground in a drift in one of the mines of the Boston and Montana Consolidated Copper and Silver Mining Company (hereafter referred to as the mining company), in Silver Bow county, was overcome by gas. Upon discovery of his condition, through the outcry of his companion, Pinazza, with others who were working with him near by, ran to his assistance. Pinazza preceded the rest, and while attempting to drag the injured man out into the other workings where the air was better and he could have relief, he was himself overcome, and thereafter, on the same day, died from the effects of the inhalation. Prior to that time, and for the benefit of the miners and others in its employ, including Pinazza, the mining company had negotiated with the defendant a policy of insurance, under the terms and stipulations of which the latter

insured these employees against bodily injuries, whether result-
ing in death or not, "suffered directly through external, violent
and accidental means, on account of an accident occurring dur-
ing the term" of the policy, by reason of the business operations
therein stated, and "while on the premises of the company or
upon the ways immediately adjacent thereto, provided for the
use of such employees or the public." The policy, among other
special agreements, contains the following:

"(A). If the death of any employee shall so result within
ninety days from such injuries, independently of all other causes,
the company will pay to the assured a sum equal to fifty-two
weeks' wages, computed at the rate per week received by such
injured employee at date of accident; but such sum shall not
exceed one thousand five hundred dollars."

"(F). Recovery may be had for the benefit of the same
employee under one of the foregoing clauses only as respects
the result of injuries caused by any one accident; and in no
event shall the company's liability for a casualty resulting in
injuries to or death of several persons, exceed ten thousand
dollars. ✻ ✻ ✻

"(G). It is further understood and agreed that injuries, fatal
or otherwise, resulting from poison or anything else accidentally
absorbed or inhaled while actually engaged in operations con-
nected with business of the assured, are covered by this policy."

It also contains the following general agreements:

## "GENERAL AGREEMENTS.

"1. The assured, upon the occurrence of a casualty covered
hereby shall give immediate written notice thereof, with the
fullest information obtainable at the time, to the company's
duly authorized local agent or to its home office in New York
City; and shall also give immediate written notice, with full
particulars, of any and all claims which shall be made on account
of a casualty covered hereby; and shall at all times render to the
company all possible co-operation and assistance.

"2. Affirmative proof of death, of loss of limb or sight, or
of duration of disability must be furnished to the company

within two months from the time of death, loss of limb or sight, or termination of disability. Legal proceedings for recovery hereunder may not be brought within three months from date of filing final proofs at the company's home office; nor brought at all unless begun within six months from time of death, loss of limb or sight, or termination of disability.   *   *   *

"10. This policy does not cover disappearance, or suicide—sane or insane; nor injuries of which there is no visible mark upon the body, nor injuries resulting from voluntary overexertion, exposure to unnecessary danger or violation of law," etc.

There was indorsed upon it the following, as an amendment to paragraph 10 of the General Agreements: "Indorsement: It is understood and agreed that the clause in paragraph 10 of the General Agreements reading 'nor injuries of which there is no visible mark upon the body,' is not to apply to death or permanent disability, resulting directly from an accident covered by this policy, provided that affirmative proof is given to the company that said death or permanent disability was the direct, sole result of an accident as aforesaid."

The policy was taken by the mining company in its own name, but the premium paid for it was obtained by deductions by the mining company from the monthly wages of all the employees for whose benefit it was negotiated. These deductions were made by their consent. At the time of his death, Pinazza had been receiving wages at the rate of $28 per week. It is alleged in the complaint that the death of Pinazza occurred during the term of the policy; that the mining company, on behalf of deceased, and on or about May 23, 1908, gave to the defendant written notice of the casualty, and furnished to it affirmative proof of the resulting death, with the fullest information concerning it, according to the terms of the contract, using for that purpose a blank form supplied by the defendant, that the mining company and the plaintiff have performed all the conditions of the contract to be by them performed, and that under the agreements and stipulations contained in it, there is due and owing to the plaintiff $1,456, no part of which has been paid,

though demand has been made. Judgment is demanded for this amount.

The answer of the defendant, after denying generally the material allegations of the complaint, alleges, as affirmative defenses, the following: (a) That the plaintiff failed to comply with clause 1 of the General Agreements; (b) that he likewise failed to comply with clause 2 of these agreements; (c) that the deceased exposed himself to unnecessary danger, thus causing his own death; and (d) that the plaintiff failed to comply with paragraph 10 of the General Agreements, as amended by the clause indorsed upon the policy. There was issue by reply. The plaintiff had verdict and judgment. The defendant has appealed from the judgment and an order denying its motion for a new trial.

Though the policy in terms designates the mining company as the insured, no question is made but that the defendant is directly liable to the plaintiff, if he, or anyone else on behalf of the deceased, furnished the proof required by the terms of the policy. The principal contention is that the evidence is insufficient to justify the verdict, in that it does not show that affirmative proof that the death of Pinazza was the direct, sole result of poisoning by an inhalation of poisonous gas was furnished to the defendant within two months, or at all.

The defendant did not introduce any evidence. Plaintiff's evidence tends to show the following: On the next day after the death there was delivered to the local agent of the defendant, signed by the foreman of the mining company, a report on the death of Pinazza, giving the name and address of the mining company, the name, address and occupation of the deceased, together with the weekly rate of wages paid him, the place where the accident occurred, the name of the foreman in charge, the hospital call made, the name of the attending physician, the alleged cause of the death, and the names and addresses of all persons who witnessed the accident. This was made upon a printed blank furnished by the defendant. The cause of the death is stated as follows: "Battista Pinazza went to 955 to help

rescue a man who was knocked out by gas, and inhaled gases which caused his death.'' There is no evidence as to how or upon what information this report was made up other than the following: Mr. Burns, a clerk of the mining company, testified: ''What I have to do with the accident, part of it, is to receive the report of the accident that comes from the different time-keepers at the mines, enter them in this book [record of accidents], and turn them over to whoever is in charge—the super-intendent—for his signature. * * * The original is sent to their [defendant's] agents here, and the copy that I keep placed on file.'' Thomas, one of the local agents of the defendant, stated: ''I said I received a report similar to this; I never received any other report than this, in connection with this, to my knowledge or recollection. I believe this was the only report served on me; that is to the best of my recollection.'' There is not any evidence tending to show that there was any communication of any kind between the defendant and the mining company, or the plaintiff, after the delivery of the report. From this evidence it is a fair inference that the report was made up by Burns, the clerk, from the statements of the timekeeper, upon one of a supply of blanks kept for that purpose, and that it was signed by the foreman as a part of the routine business of the office. It is conceded that the report was a sufficient notice of the death. The question, therefore, is whether it is sufficient as affirmative proof of the cause of death, required by paragraph 2 of the General Agreements and the indorsement amendatory of paragraph 10.

The giving of the notice and the furnishing of proof are distinct and separate acts. Proof of death, seasonably made, may serve the purpose of both notice and proof, because the formal statement of facts made in the proof ordinarily must include all the information imparted by the notice. But a mere informal notice does not ordinarily supply the place of formal proof. (O'Reilly v. Guardian Mut. L. Ins. Co., 60 N. Y. 169, 19 Am. Rep. 151; May on Insurance, sec. 460; 4 Joyce on Insurance, sec. 3285.) However the two acts may be done, whether conjunc-

tively or separately, both are conditions precedent, which must be complied with in order to render the insurer liable, unless there is an express or implied waiver.   (4 Joyce on Insurance, sec. 3286.)   In the absence of an express stipulation as to the form and character of the evidence which must be furnished, it is difficult to determine in a given case whether the provision as to proof has been complied with.   The determination of the question, however, does not rest with the insurer alone.   Mr. Joyce, speaking on this subject, says: ''The provision requires such notice and proof as may appear to a court to be in accordance with the rules of evidence; and, if such notice and proof have been given, then there has been a compliance with the provision.   The question, then, as to what is due proof is to be determined by the court according to the rules of evidence, and not by the insurers.''   (Section 3290.)   This statement seems to imply that the evidence furnished must be such as would be adjudged by a court admissible under the rules applicable in judicial proceedings.   To the same effect is the statement of the rule in *Taylor* v. *Aetna Life Ins. Co.,* 13 Gray (Mass.), 434, and in *O'Reilly* v. *Guardian Mut. Life Insurance Co., supra.* In the latter case it is said: ''The condition can only be performed by furnishing evidence in some form of the truth of the fact stated in the notice, and upon which the right of action depends.   It need not be that full, clear and explicit proof which would be required upon the trial of an issue upon the question, but it must be such reasonable evidence as the party can command at the time, to give assurance that the event has happened upon which the liability of the insurers depends.   *   *   * The purpose of the condition is that the insurer may be able intelligently to form some estimate of his rights and liabilities before he is obliged to pay, and some proof must be exhibited.''   Our statute (Revised Codes, sec. 5628) declares: ''When preliminary proof of loss is required by a policy, the insured is not bound to give such proof as would be necessary in a court of justice; but it is sufficient for him to give the best evidence which he has in his power at the time.''   While this provision,

when read in connection with the preceding and following sections, would seem to apply to fire insurance policies exclusively, it applies as well to life and accident insurance. (Revised Codes, sec. 5249.)

The rule stated by the foregoing authorities is vague and indefinite, and the provision contained in the statute is not less so; nevertheless the evident purpose of the legislature in enacting it was to dispense with the necessity of the production, in the first instance, of formal depositions or sworn statements of eye-witnesses, and declare evidence in any form sufficient when it is substantial and trustworthy enough to enable the insurer to form an intelligent estimate of his rights and liabilities under his contract, and is the best evidence which the insured has in his power at the time. It makes it entirely clear that any succinct and intelligent statement, giving the information called for by the stipulation in the policy, whether verified or not, or whether by eye-witnesses or not, is sufficient to put the insurer upon inquiry to determine whether he is liable. It recognizes evidence other than that which falls within the range of judicial evidence, as defined in section 7844, Revised Codes, such as the sworn testimony of witnesses, delivered orally or by deposition, or, in some cases, by affidavit or the like. It includes evidence of any degree which would tend to establish a disputed fact; and the court must in each case determine whether, in whatever form it may be furnished, it gives substantially the information stipulated for.

The report set forth in the statement herein was furnished to the defendant on the next day after Pinazza died. The statement contained in it, touching the cause of his death and the attendant circumstances, is brief, and does not enter into particulars, yet it contains the information that he died from inhaling poisonous gas while in the company's mine. It is not sworn to; but this formality was not required. It purports to be a statement of an eye-witness, and there is no suggestion in the pleadings or the evidence that it is not a true statement. It tends to show that death was caused solely and exclusively by

the inhalation of poisonous gas, because the statement is: "He inhaled gases which caused his death." This direct statement, while not sufficient to establish the fact of death and the cause of it in a judicial investigation, because not sworn to, was nevertheless affirmative evidence of the fact, and was sufficient to put the defendant on inquiry to determine its rights in the premises. If it desired evidence more conclusive because entering more into detail, it should have called for it without unreasonable delay. The names and residences of all the witnesses and of the attending physician were stated; thus the opportunity was afforded to the defendant, if such course was deemed necessary. Having made no objection, it must be deemed to have waived its right to demand more explicit proof. (Revised Codes, sec. 5630.) We do not mean to be understood as saying that, if the report had amounted to nothing more than a mere notice of the death, any duty would have rested upon the defendant to demand the affirmative proof required by the policy. Mere silence does not under such circumstances amount to a waiver on the part of the insurer. (*O'Reilly* v. *Guardian Mut. L. Ins. Co., supra.*) We do mean to say, however, that when the insured undertakes to incorporate the notice and the proof in the same communication to the insurer, and the proof of the cause of death, with the attending facts, meets all the requirements of the policy, except that it is not as full and explicit as it might be, the silence of the insurer is a waiver of his right to object.

What we have already said is sufficient answer to a further contention by counsel that the required proofs were not furnished to the defendant within two months from the death of Pinazza, as required by paragraph 2 of the General Agreements, and that the action was therefore prematurely brought.

Contention is made that recovery cannot be had because it appears affirmatively that Pinazza voluntarily exposed himself to unnecessary danger, within the meaning of paragraph 10 of the General Agreements. When it became known to deceased and his companions that a fellow-workman was in danger, and they went to his rescue, they found him lying about five feet

from the entrance of the drift. They had hurried up a ladder to reach the place. Pinazza, apparently thinking that he could go in that distance with safety, did so, and, in attempting to drag the injured man out, was overcome, and while the rest of the party were engaged in rescuing the two, he was so far injured that he died. The presence of gas was apparent as soon as the party reached the place. The general rule on this subject is that the law has so high a regard for human life that it will not impute negligence to one who attempts to save it, unless the attempt be made under such circumstances as to constitute it rashness in the estimation of prudent persons. (1 Labatt on Master and Servant, sec. 360; Thompson on Negligence, 2d ed., 5435.) Thus stated, the rule is broad enough to cover, not only an attempt to save life under spontaneous impulse, aroused by sudden and unexpected perception of the peril, and without thought or calculation of the chances of injury or loss of life to him who makes the attempt, but also an attempt which is made after such calculation as the circumstances permit, the rescuer acting upon the conclusion that he can save the life without the loss of his own. In the latter case the exposure is voluntary in a sense, yet, if under the same circumstances a prudent man would obey the impulse to save a life, the exposure ought not to be held to be voluntary, within the meaning of the contract. At any rate, the danger is not, under the circumstances, unnecessary. This rule, we think, is fairly deducible from the adjudicated cases. (*Thomas* v. *Quartermaine*, 18 Q. B. D. 685; *Pennsylvania Co.* v. *Roney*, 89 Ind. 453, 46 Am. Rep. 173; *Fidelity & Casualty Co.* v. *Sittig*, 181 Ill. 111, 54 N. E. 903, 48 L. R. A. 359; *Cottrill* v. *Chicago etc. Ry. Co.*, 47 Wis. 634, 32 Am. Rep. 796, 3 N. W. 376; *Schwartz* v. *Shull*, 45 W. Va. 405, 31 S. E. 914; *De Loy* v. *Travelers' Ins. Co.*, 171 Pa. 1, 50 Am. St. Rep. 787, 32 Atl. 1108; *Williams* v. *United States Mut. Acc. Assn.*, 60 Hun, 580, 14 N. Y. Supp. 728; *Tucker* v. *Mutual Benefit Co.*, 50 Hun, 50, 4 N. Y. Supp. 505; *United States Mut. Acc. Assn.* v. *Hubbell*, 56 Ohio St. 516, 47 N. E. 544, 40 L. R. A. 453; *Smith* v. *Aetna Life Ins.*

*Co.,* 115 Iowa, 217, 91 Am. St. Rep. 153, 88 N. W. 368, 56 L. R. A. 271; *Manufacturers' Acc. Indemnity Co.* v. *Dorgan,* 58 Fed. 945, 7 C. C. A. 581, 22 L. R. A. 620; *Schneider* v. *Provident L. Ins. Co.,* 24 Wis. 28, 1 Am. Rep. 157; *Providence L. & I. Co.* v. *Martin,* 32 Md. 310.)

The rule which applies to this provision of the policy is analogous to that which governs the defense of contributory negligence. The engineer who stands at his throttle in the presence of imminent danger of collision or the derailment of his train by an obstruction on the track, in an effort to save his passengers, and is killed or injured, cannot be said, as a matter of law, to be guilty of contributory negligence. He voluntarily exposes himself to the peril, but not unnecessarily so. The circumstances demand that he do his duty, and he does so in obedience to those higher impulses which must govern the conduct of the average prudent man. He may use his best judgment as to whether he can save his passengers by assuming the risk, and it is for the jury to say whether in doing so he is guilty of contributory negligence. So, also, in other practical affairs of life. Emergencies often arise calling for immediate action. In all such cases, though action may be accompanied by danger, yet while the exposure to it is voluntary, the danger cannot in any sense of the term be said to be unnecessary. On this subject the court in *Fidelity & Casualty Co.* v. *Sittig, supra,* said: "For one to leap into a turbulent stream, rush into a burning building, or do any other hazardous thing to save human life, would be a voluntary exposure to danger, but not to unnecessary danger. So, too, many emergencies in the lives of men occur where the most urgent necessity requires their presence at some particular place at some particular time, and where to miss a train would involve serious consequences. In such a case a voluntary exposure to danger might not be unnecessary. The presence of a physician or surgeon at some critical period in the illness or injury of a human being might be necessary to save life, and it might be necessary for him to expose himself to danger to reach his patient, or in some other

respect to perform his professional duty.   The necessity implied in the provision of the policy does not mean only that which is unavoidable or inevitable, but also any object or purpose which men of moral responsibility and prudence would regard as of such serious importance in the performance of duty as to demand or justify the incurring of risk of danger to accomplish it." Under the circumstances, the question whether the exposure of himself, by Pinazza, was unnecessary, was for the jury.

Contention is made that the evidence does not show that Pinazza's death was caused by the inhalation of gas.   There is no merit in this contention.   The evidence establishes the presence of gas in the drift; that Labek was overcome by it; that Pinazza went in to rescue him, and was apparently overcome just as was Labek; that his companions suffered more or less from it during the process of rescue; and that they were finally compelled to make use of helmets to protect themselves, before they succeeded in accomplishing it.   There was no medical testimony introduced as to the specific cause of death, but, taking the evidence as a whole, it is amply sufficient to justify a finding that the cause of it was the inhalation of gas, as alleged.

Fault is found with certain of the instructions.   In the preparation of their brief counsel failed to comply with the rule as to the specifications of error in this regard (Rule X, subdivision "b" [37 Mont. xxxii, 103 Pac. x]) ; we have nevertheless given attention to the criticisms made, and conclude that they are also without substantial merit.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.